Neil MILLER, Plaintiff,

v.

CITY OF BOSTON, et al., Defendants.

No. CIV.A. 03–10805–JLT.

United States District Court,
D. Massachusetts.

Dec. 11, 2003.

Howard Friedman, Jacqueline L. Richards, Law Offices of Howard Friedman, Boston, MA, Brandon L. Garrett, Peter J. Neufeld, Cochran Neufeld & Scheck LLP, New York City, Myong J. Joun, Howard Friedman Law Offices, Boston, MA, for Plaintiff.

Amy E. Ambarik, James M. Chernetsky, City of Boston Law Department, Natalie S. Monroe, Attorney General's Office, Boston, MA, for Defendants.

### MEMORANDUM

TAURO, District Judge.

This action is the result of the wrongful conviction, and imprisonment for more than a decade, of Neil Miller ("Miller") for the crime of rape in 1990. In 2000, Miller's conviction was vacated, and the indictment against him was dismissed. He then filed suit against a number of municipal officials and entities, alleging that, at each stage of the criminal process, his rights were violated. Among those municipal officials and entities that Miller filed suit against are Joseph Pishkin ("Pishkin"), a member of the Boston Police Department, the Office of the District Attorney for the Suffolk District ("the Office of the District Attorney"), and Charles Daly ("Daly"), an assistant district attorney with the Office of the District Attorney.

Pishkin, the Office of the District Attorney, and Daly have all moved for dismissal of the claims that Miller has asserted against them.

### Background

Miller has alleged the following facts: On August 24, 1989, a young woman, "Joan Roe" ("Roe"), was raped and robbed in her

apartment.[1] Roe was not acquainted with the man who raped her.[2]

After Roe was raped, she went to a hospital.[3] At the hospital, Roe provided Margot Hill ("Hill"), a member of the Boston Police Department, with a description of the man who raped her.[4] She described him as a five-foot, ten-inch tall, 160–pound black man with a thin build, brown hair, brown eyes, a short afro, and a mustache.[5]

The following day, members of the Boston Police Department had Roe view approximately six hundred photographs of black men.[6] Roe was unable to identify her rapist from that array.[7] Roe subsequently viewed another one hundred photographs of black men without being able to make an identification.[8]

On September 18, 1989, Hill brought Roe to a Boston Police Department artist.[9] The artist worked with Roe and prepared a composite sketch of the rapist.[10] Later that day, Hill showed the sketch to two fellow officers of the Boston Police Department.[11] One of the officers told Hill that the sketch resembled Miller, a black man

that the officers had recently encountered.[12]

Hill located a six-year-old photograph of Miller, which was taken when he was sixteen years old, and included it in an array of ten to twelve photographs that she showed to Roe on September 22, 1989.[13] There were two photographs in the array about which Roe "felt very strongly."[14] That is, there were two photographs that Roe thought might depict her rapist.[15] The first photograph that she selected was the one of Miller.[16] The second photograph was of a different man.[17] After Hill asked Roe "which photo she felt most strongly about," and after Hill told her to "go with her first impression," Roe selected the photograph of Miller.[18]

On the basis of that identification, a warrant was issued for Miller's arrest.[19] A new photograph of Miller was taken when he was arrested on November 15, 1989.[20] On November 22, 1989, Hill showed Roe a new array of photographs that included Miller's November 15, 1989 arrest photo-

1. Compl. ¶ 17. "Joan Roe" is a pseudonym that is used to protect the rape victim's identity.

2. *Id.*

3. *Id.* ¶ 22.

4. *Id.* ¶¶ 22–23.

5. *Id.* ¶ 23.

6. *Id.* ¶ 26.

7. *Id.*

8. *Id.* ¶ 27.

9. *Id.* ¶ 28.

10. *Id.*

11. *Id.* ¶ 29.

12. *Id.*

13. *Id.* ¶ 30.

14. *Id.* ¶ 31.

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.* ¶ 32.

19. *Id.* ¶ 34.

20. *Id.* Miller claims that his physical appearance in November 1989 "bore only a minimal resemblance to ... Roe's [initial] description [of the man who raped her] or ... the composite sketch." *Id.* Moreover, Miller claims that his physical appearance in November 1989 "was completely different from the way he looked in the photo taken when he was sixteen." *Id.*

graph.[21] Roe selected the November 15, 1989 photograph of Miller as depicting the man who raped her, even though Miller, in the November 15, 1989 photograph, looked very different from the way that he looked when he was sixteen.[22]

Miller's case was calendared for a probable cause hearing on February 27, 1990.[23] Roe was at the courthouse for that hearing.[24]

At the first call of the case, Miller's lawyer "informed ... Daly that, since the identity of the perpetrator was a critical issue in the case, he was requesting that ... Miller be kept out of the courtroom during the probable cause hearing so that a non-suggestive identification procedure could be arranged for a later date."[25] Daly "indicated ... that [Roe] was being kept upstairs in the district attorney's office until the hearing took place."[26]

Before the second call of the case, Daly and Pishkin learned that Miller was waiting in the hallway outside the courtroom where the probable cause hearing was to take place.[27] Daly told Roe "that he and ... Pishkin would accompany her downstairs and, if she saw the man who had raped her, that she should identify him."[28] Roe and Pishkin walked downstairs next to

one another.[29] When they reached the courtroom where the probable cause hearing was to take place, they saw two men standing outside of that courtroom.[30] Roe informed Pishkin that she thought that one of those two men (who was, in fact, Miller) was the man who raped her.[31] The man who Roe identified (that is, Miller) then walked into the courtroom and sat down.[32] Roe followed him into the courtroom and identified him to Pishkin as her rapist.[33]

Later, at a hearing where Miller sought to suppress the above mentioned identifications, it was conceded that Miller's Sixth Amendment right to counsel had been violated by the hallway and courtroom identifications.[34] The identifications were not admitted into evidence at Miller's subsequent trial.[35] Roe, nevertheless, was permitted to identify Miller at trial.[36]

In December 1990, Miller was convicted of forcible copulation, forcible rape, breaking and entering, and robbery.[37] The primary evidence that was presented against Miller at trial was Roe's testimony (which included in-court identifications and the out-of-court photograph identifications), Hill's corroboration of Roe's photograph identifications, and serology results.[38]

21. *Id.* ¶ 35.

22. *Id.*

23. *Id.* ¶ 38.

24. *Id.* ¶ 39.

25. *Id.* ¶ 38.

26. *Id.*

27. *Id.* ¶ 39.

28. *Id.*

29. *Id.* ¶ 40.

30. *Id.*

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.* ¶ 42.

35. *Id.*

36. *Id.*

37. *Id.* ¶ 58.

38. *Id.* ¶ 57. Miller claims that, for a variety of reasons, the serology results were flawed. *See id.* ¶¶ 43–56. Miller's claims concerning the serology results, however, are not relevant

In April 2000, DNA testing results conclusively established that Miller was not the man who raped Roe.[39] On May 10, 2000, Miller's conviction was vacated and the indictment against him was dismissed.[40]

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal is appropriate where a party "fail[s] to state a claim upon which relief can be granted."[41] A claim should be dismissed pursuant to Rule 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[42] In considering a Rule 12(b)(6) motion to dismiss, "a court should not decide questions of fact."[43] Rather, it "must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party."[44]

Yet, "Rule 12(b)(6) is not entirely a toothless tiger."[45] That is, its "minimal requirements are not tantamount to nonexistent requirements. The threshold may be low, but it is real—and it is the plaintiff's burden to take the step which brings

his case safely into the next phase of the litigation."[46]

### A. Pishkin's Motion to Dismiss

Miller's claim against Pishkin is for malicious prosecution under Massachusetts law.[47] Pishkin contends that Miller's claim for malicious prosecution should be dismissed, because Miller's complaint fails to state a malicious prosecution claim against him.

In order to state a claim for malicious prosecution under Massachusetts law, a plaintiff must "show four elements: 1) that the defendant initiated a criminal action against [the plaintiff]; 2) that the criminal prosecution ended in [the plaintiff's] favor; 3) that there was no probable cause to initiate the criminal charge; and 4) that the defendant acted maliciously."[48] Significantly, "a person 'who takes an active part in continuing or procuring the continuation of criminal proceedings initiated ... by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings.'"[49]

Miller's complaint does not state a claim for malicious prosecution under the applicable legal standards. First, Miller does

to the matters that are presently before this court.

39. *Id.* ¶ 61.

40. *Id.* ¶ 62.

41. Fed.R.Civ.P. 12(b)(6).

42. *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

43. *Id.*

44. *Hathaway v. Stone*, 687 F.Supp. 708, 710 (D.Mass.1988).

45. *The Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir.1989).

46. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

47. Compl. ¶¶ 109–12.

48. *Santiago v. Fenton*, 891 F.2d 373, 387 (1st Cir.1989); *see also Meehan v. Town of Plymouth*, 167 F.3d 85, 88–89 (1st Cir.1999) ("In order to state a cause of action for malicious prosecution, a plaintiff must allege that 'criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor.'") (quoting *Landrigan v. City of Warwick*, 628 F.2d 736, 745 n. 6 (1st Cir.1980)).

49. *Mitchell v. City of Boston*, 130 F.Supp.2d 201, 215 (D.Mass.2001) (quoting Restatement (Second) of Torts § 655).

not allege that Pishkin "initiated a criminal action against" him.[50] Miller's complaint is devoid of any allegation that Pishkin was involved in the investigation of Miller or, more importantly, in Miller's November 15, 1989 arrest. Rather, Miller alleges that Pishkin first became involved in Miller's criminal action on February 27, 1990, when Pishkin participated in the two courthouse identifications of Miller that occurred on the day of Miller's probable cause hearing.[51] Pishkin, therefore, did not "initiate[ ] a criminal action against" Miller.[52]

Second, Miller does not allege that Pishkin took "an active part in continuing or procuring the continuation of criminal proceedings initiated ... by another" person.[53] Pishkin's participation in the courthouse identifications did not rise to the level of active participation in "continuing or procuring the continuation of criminal proceedings" against Miller.[54] Pishkin merely accompanied Roe to the courtroom in which Miller's probable cause hearing was scheduled to occur.[55] It is not alleged that he arranged for Miller to be present outside of the courtroom, or that he attempted to control whom Roe and he encountered on their way to the courtroom. In addition, the courthouse identifications in which Pishkin participated

were not admitted into evidence at Miller's trial. Pishkin's tangential participation in those identifications, therefore, had little, if any, bearing on the criminal proceedings against Miller. And, finally, because the courthouse identifications were suppressed, and because Pishkin did not testify at Miller's trial, the courthouse identifications were the extent of Pishkin's involvement in the criminal proceedings against Miller. Under these circumstances, it cannot be said that Pishkin took "an active part in continuing or procuring the continuation of criminal proceedings initiated ... [against Miller] by another" person.[56] Miller's malicious prosecution claim against Pishkin is, therefore, dismissed.[57]

**B.** *The Office of the District Attorney and Daly's Motion to Dismiss*

   1.  The Motion to Dismiss Miller's Claim Against the Office of the District Attorney

■ Miller's sole claim against the Office of the District Attorney, which was filed pursuant to 42 U.S.C. § 1983 (" § 1983"), alleges that the Office of the District Attorney violated his constitutional rights by failing to train and supervise its employees.[58] More specifically, Miller claims that the Office of the District Attor-

---

50. *Santiago,* 891 F.2d at 387.

51. Compl. ¶¶ 38–40.

52. *Santiago,* 891 F.2d at 387.

53. *Mitchell,* 130 F.Supp.2d at 215 (quoting Restatement (Second) of Torts § 655).

54. *Id.*

55. Compl. ¶¶ 39–40.

56. *Mitchell,* 130 F.Supp.2d at 215 (quoting Restatement (Second) of Torts § 655).

57. Although this ruling is based on the reasoning that is set forth in the text above, it is

not at all clear to this court that Miller's complaint even alleges facts that indicate either that Pishkin acted maliciously when he participated in the identifications at issue or that there was an absence of probable cause for the criminal charge against Miller. For example, Miller does not allege that Pishkin was present when Miller's counsel "request[ed] that ... Miller be kept out of the courtroom during the probable cause hearing so that a non-suggestive identification procedure could be arranged for a later date." Compl. ¶ 38.

58. *Id.* ¶ 107.

ney violated his rights by failing to ensure that its prosecutors, including Daly, used lawful identification procedures.[59] The Office of the District Attorney maintains that the Eleventh Amendment bars Miller's claim against it. It also takes the position that Miller's § 1983 claim is invalid because the Office of the District Attorney is not a "person" within the meaning of the statute.

■ The Eleventh Amendment to the United States Constitution provides in relevant part: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."[60] By its express terms, the Eleventh Amendment precludes "only suits brought against a State by citizens of another State."[61] Yet, despite the Eleventh Amendment's seemingly limited scope, it has long been interpreted as also barring suits against a state by citizens of that state.[62] Thus, "in the absence of consent[,] a suit in which [a] State . . . is named as the defendant is proscribed by the Eleventh Amendment."[63]

■ It is important to recognize at the outset that the applicability of the Eleventh Amendment does not depend on the relief that is sought or the nature of the claims that are asserted against a state. For example, the Supreme Court has made it clear that § 1983 does not override the Eleventh Amendment.[64]

■ It is also significant to note that, for Eleventh Amendment purposes, a suit against a state agency or department is the same as a suit against the state. It, therefore, is the case that suits against a "State or one of its agencies or departments [are] . . . proscribed by the Eleventh Amendment."[65]

The issue that is presently before this court is whether the Office of the District Attorney is a state agency. If it is, then it is entitled to Eleventh Amendment immunity, and Miller's § 1983 claim must be dismissed.

This court finds that the Office of the District Attorney is, indeed, a state agency.[66] Its predominant function is to "appear for the [C]ommonwealth . . . in all . . . criminal [and] civil" cases that are pending within its district.[67] In addition,

---

59. *Id.*

60. U.S. Const. amend. XI.

61. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

62. *See, e.g., id.*

63. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "A state[, however,] may *consent* to be sued in federal court." *Papasan*, 478 U.S. at 276 n. 10, 106 S.Ct. 2932 (emphasis in original).

64. *See Quern v. Jordan*, 440 U.S. 332, 343, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *see also Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900 (The Eleventh Amendment's "jurisdictional

bar applies regardless of the nature of the relief sought.").

65. *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900.

66. *See Lodge v. Dist. Attorney for the Suffolk Dist.*, 21 Mass.App.Ct. 277, 281, 486 N.E.2d 764 (1985) ("[T]he office of the district attorney for the Suffolk district is more properly denominated a State 'agency' . . . .").

67. Mass. Gen. Laws ch. 12, § 27. The text of Mass. Gen. Laws ch. 12, § 27 provides as follows:

District attorneys within their respective districts shall appear for the [C]ommonwealth in the superior court in all cases, criminal or civil, in which the [C]ommonwealth is a party or interested, and in the hearing, in the supreme judicial court, of all questions of law arising in the cases of which they respectively have charge, shall

the Attorney General has supervisory authority over all district attorneys and can take charge of cases that are being handled by the district attorneys.[68]   What is more, the salaries of the district attorneys, their assistants, and their employees are paid by the Commonwealth.[69]   The district attorneys must also account to the Commonwealth for their expenses.[70]   And, although the offices of the district attorneys are, for the most part, divided by county, some of the offices transcend county lines.[71]   Because the Office of the District Attorney is a state agency, the Eleventh Amendment bars the § 1983 claim that Miller has asserted against it.

Miller maintains that, because he has raised a § 1983 claim pursuant to *Monell v. Department of Social Services of the City of New York,*[72] this court should take a "functional approach" to Eleventh Amendment immunity.[73]   This court disagrees.   In *Monell,* the Supreme Court held that "a local government may ... be sued under § 1983 ... when execution of [the] government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ...." [74]   But, the Court has stressed that *Monell* did nothing to affect the scope of Eleventh Amendment immunity for states or state agencies.[75]   The cases that Miller cites in support of his *Monell* argument are, for a variety of reasons, inapposite.[76]

■   Even if this court were to ignore the Office of the District Attorney's Eleventh Amendment argument, it would still dismiss the § 1983 claim that is presently under consideration.   Miller's § 1983 claim against the Office of the District Attorney also fails because the Office of the District Attorney is not a "person" within the meaning of the statute.   Section 1983 provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

aid the attorney general in the duties required of him, and perform such of his duties as are not required of him personally; but the attorney general, when present, shall have the control of such cases.   They may interchange official duties.

**68.**   *See* Mass. Gen. Laws ch. 12, §§ 3, 6, 27.

**69.**   *See Lodge,* 21 Mass.App.Ct. at 283, 486 N.E.2d 764 (citing Mass. Gen. Laws ch. 12, §§ 15, 16, 19, 20, 20A, 22).

**70.**   *See* Mass. Gen. Laws ch. 12, §§ 23, 24, 25, 25A, 29.

**71.**   *See* Mass. Gen. Laws ch. 12, § 13.

**72.**   436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**73.**   Mem. of Law in Reply to the District Att'y Defs.' Mot. to Dismiss at 7–8.

**74.**   *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

**75.**   *See Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("The Court's holding in *Monell* was 'limited to local government units which are not considered part of the State for Eleventh Amendment purposes' ....") (quoting *Monell,* 436 U.S. at 690 n. 54, 98 S.Ct. 2018).

**76.**   *See, e.g., Carter v. City of Philadelphia,* 181 F.3d 339, 347–55 (3d Cir.1999) (finding that the Philadelphia District Attorney's Office is a local, rather than a state, agency for purposes of the Eleventh Amendment), *cert. denied, Roe v. Carter,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999); *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992) (discussing whether a county district attorney's conduct gave rise to municipal liability and starting with the premise that the district attorney was a county, and not a state, official), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress .... [77]

Neither a state nor a state agency is a "person" for purposes of § 1983.[78] This court has already explained that the Office of the District Attorney is a state agency. Because the Office of the District Attorney is a state agency, it is not a "person" subject to suit pursuant to § 1983.

### 2. The Motion to Dismiss Miller's Claims Against Daly

■ Miller filed against Daly two § 1983 claims, one for employing suggestive identification procedures and one for malicious prosecution. He also filed against Daly one state law malicious prosecution claim. Daly maintains that he is absolutely immune from suit on those claims.

■ The law is settled that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case' ... insofar as that conduct is 'intimately associated with the judicial phase of the criminal process' ...." [79] It is also beyond question that appearing at a probable cause hearing "is ... connected with the initiation and conduct of a prosecution, particularly where the hearing occurs after arrest ...." [80] And, participating in "a probable-cause hearing is 'intimately associated with the judicial phase of the criminal process.' " [81]

■ The protections of absolute immunity, moreover, extend to actions that occur prior to a formal court proceeding and outside of a courtroom.[82] Indeed, the Supreme Court has recognized that " 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' and are nonetheless entitled to absolute immunity." [83] The Court, thus, has made it clear that the protections of absolute immunity may apply to the out-of-court actions of a prosecutor preparing for a probable cause hearing.

■ To be sure, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." [84] A court must "draw a line between prepatory conduct that is merely administrative or investigative, and that which is itself pros-

---

**77.** 42 U.S.C. § 1983 (emphasis added).

**78.** *See, e.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991), *cert. denied,* 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992).

**79.** *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Without absolute immunity, "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler,* 424 U.S. at 423, 96 S.Ct. 984.

**80.** *Burns,* 500 U.S. at 492, 111 S.Ct. 1934.

**81.** *Id.* (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. 984).

**82.** *See Buckley v. Fitzsimmons,* 509 U.S. 259, 272, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

**83.** *Id.* (quoting *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. 984).

**84.** *Id.* at 273, 113 S.Ct. 2606.

ecutorial." [85]

■ Still, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." [86] Included among those protected acts are "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation" in an official proceeding.[87]

In view of these fundamental principles, Daly is absolutely immune from prosecution under § 1983 for his actions in this case. Miller's § 1983 claims are based on his allegation that Daly spoke to Roe in the courthouse immediately before the probable cause hearing and told her that "if she saw the man who had raped her, ... she should identify him." [88] As this court has already explained, the actions of a prosecutor preparing for a probable cause hearing are entitled to the protections of absolute immunity, so long as they are "intimately associated with the judicial phase of the criminal process." [89] Daly's actions in preparing for Miller's probable cause hearing conformed to that standard. Daly did nothing more than evaluate the evidence that the police had already assembled against Miller and prepare Roe to testify at the probable cause hearing. Speaking to a testifying witness immediately before a probable cause hearing and determining whether that witness can identify the individual who committed the crime in issue is conduct "intimately associated with the judicial phase of the criminal process." [90]

Despite Miller's contentions, this court does not believe that Daly's conduct can be labeled as simply investigatory (and, thus, characterized as beyond the scope of the protections of absolute immunity). Daly, of course, did not act as an investigator merely because his challenged conduct took place outside of the courtroom.[91] What is more, Miller does not allege in his complaint that Daly had any reason to believe that Miller might not have been the man who raped Roe, or that the case required further investigation. At the time that the events in issue occurred, Roe had identified Miller as her rapist on two separate occasions,[92] Miller had been arrested,[93] and the post-arrest, probable cause hearing was soon to commence. Miller, moreover, does not allege any facts that indicate that Daly doubted the reliability or constitutionality of the identifications of Miller. Quite simply, Miller fails to allege in his complaint facts from which this court can infer that Daly was conducting an investigation when he spoke to Roe before the probable cause hearing. Daly, therefore, is absolutely immune from Miller's two § 1983 claims.

■ Similarly, Daly is absolutely immune from Miller's state law malicious prosecution claim. In Massachusetts, "a prosecutor [is] absolutely immune from civil liability for the performance of his

---

**85.** *Guzman–Rivera v. Rivera–Cruz,* 55 F.3d 26, 29 (1st Cir.1995).

**86.** *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606.

**87.** *Id.*

**88.** Compl. ¶ 39.

**89.** *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**90.** *Id.*

**91.** *See Buckley,* 509 U.S. at 272, 113 S.Ct. 2606.

**92.** Compl. ¶¶ 32, 35.

**93.** *Id.* ¶ 34.

official duties." [94]   As this court has already noted, Daly's challenged conduct relates solely to the performance of his official role in the judicial phase of Miller's criminal case.  As a result, Miller's state law malicious prosecution claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Pishkin's motion to dismiss the claim against him is ALLOWED, the Office of the District Attorney's motion to dismiss the claim against it is ALLOWED, and Daly's motion to dismiss the claims against him is ALLOWED.

AN ORDER WILL ISSUE.

---

**94.** *Chicopee Lions Club v. District Attorney for the Hampden District,* 396 Mass. 244, 251–52, 485 N.E.2d 673 (1985) ("[T]he scope of prosecutorial immunity under State common law ... is at least as broad as under § 1983 ...."). Prosecutors receive absolute immunity in Massachusetts because "such immunity tends to insure zealous and fearless administration of the law." *Andersen v. Bishop,* 304 Mass. 396, 400, 23 N.E.2d 1003 (1939).