**RIVERDALE MILLS CORP.**
**et al., Plaintiffs,**

**v.**

**UNITED STATES et al., Defendants.**

**No. CIV.A.00–40137–NMG.**

United States District Court,
D. Massachusetts,
Central Division.

March 16, 2004.

Warren G. Miller, Miller & Miller, Boston, MA, Jamy Buchanan, Buchanan & Assoc., Boston, MA, Carl N. Edwards, Dover, MA, Henry T. Dunker, Weymouth, MA, Paul D. Kamenar, Washington Legal Foundation, Washington, DC, for plaintiffs.

Dennis C. Barghaan, R. Joseph Sher, U.S. Dept. of Justice, Torts Div., Washington, DC, Barbara Healy Smith, U.S. Attorney's Office, Boston, MA, fro defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case arises out of claims for malicious prosecution and violation of plaintiffs' Fourth and Fifth Amendment Rights. Pending before the Court are three motions for summary judgment filed by the four defendants.

### I. *Background*

#### A. *Procedural History*

This case has a long procedural history before the Court. In 1998 the Environmental Protection Agency ("EPA"), in the

name of the United States, brought criminal proceedings against plaintiffs Riverdale Mills Corporation ("Riverdale Mills") and its owner, James M. Knott ("Knott"). The government alleged that Riverdale Mills and Knott had violated the Clean Water Act, 33 U.S.C. § 1319(c)(2)(A) by knowingly discharging pollutants into the waters of the United States with a pH below 5.0 standard units ("s.u."), a felony offense.

That indictment was voluntarily dismissed without prejudice the following year after Riverdale Mills's motion to suppress certain evidence was allowed. Following the dismissal of the indictment, Knott and Riverdale Mills moved to recover their attorneys' fees under the so-called Hyde Amendment. This Court's award of attorney's fees to Riverdale Mills as a prevailing party under that Amendment, see United States v. Knott, 106 F.Supp.2d. 174, 180 (D.Mass.2000), was reversed by the First Circuit Court of Appeals, see United States v. Knott, 256 F.3d 20 (1st Cir.2001).

In addition to seeking their attorneys' fees in the criminal action after the indictment was dismissed, plaintiffs filed the present civil action against the United States pursuant to the Federal Torts Claims Act, 28 U.S.C. §§ 1346, 2671—80 ("the FTCA") for malicious prosecution and against the individual defendants under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), arguing that the agents violated the defendants Fourth and Fifth Amendment rights. After a reversal of this Court's Hyde Amendment award by the First Circuit, whose decision included a finding that the criminal prosecution did not lack legal merit or factual foundation, Knott, 256 F.3d at 34, this Court stayed proceedings in the pending civil action and allowed defendants to file a motion for

summary judgment. They did so in October, 2001.

Plaintiffs were granted two lengthy extensions of time to respond to the motion for summary judgment and then moved to continue the summary judgment proceedings pursuant to Fed.R.Civ.P. 56(f) in order to conduct discovery in opposition to that motion. In September, 2002, this Court allowed plaintiffs' motion and denied the pending summary judgment without prejudice to refiling such motions after the limited discovery was complete. After a protracted and contentious discovery dispute, the deadline for filing summary judgment motions in this matter was set for June 25, 2003.

On June 23, 2003, defendants' filed a conditional motion for summary judgment and, with leave of the Court, one month later filed three additional motions for summary judgment, one on behalf of defendant United States, one on behalf of defendants Daniel Granz ("Agent Granz") and Justin Pimpare ("Agent Pimpare") and one on behalf of defendant Stephen Creavin ("Agent Creavin"). Plaintiffs opposed all of those motions and moved for a hearing on all of them. Finally, the defendants filed a motion for leave to file a reply to plaintiffs' oppositions.

B. *Factual Background*

The facts in the case are both complicated and hotly contested. Knott is the principal owner of Riverdale Mills, which operates a facility in Northbridge, Massachusetts, to manufacture plastic-coated steel wire mesh. As a result of the manufacturing process, the factory generates some wastewater with a pH of 2.0 s.u. and other wastewater with a pH of about 12.0 s.u.. Riverdale Mills treats the wastewater internally and then discharges it into the public sewer system. Precisely where the internal treatment ends and the public

sewer begins is an issue of considerable controversy.

In the summer of 1997 the EPA received an allegedly anonymous letter from an individual claiming to be an employee of Riverdale Mills. The letter stated that Riverdale Mills had not been operating its wastewater treatment system nor monitoring the pH or zinc levels of its discharge. After receiving that letter, EPA Agents Pimpare and Granz conducted an inspection of Riverdale Mills on October 21, 1997.

Before commencing the inspection, the agents met with Knott and other Riverdale Mills management personnel to inform them of the purpose of their visit. Knott consented to the inspection on the condition that the inspectors be accompanied at all times by designated representatives of Riverdale Mills. The agents did not have a warrant to search the premises.

During the course of that initial inspection Agents Pimpare and Granz took a series of pH samples of wastewater at a manhole on Riverdale Street outside the Mill ("Manhole # 1"). The defendants assert that they took multiple pH readings that day ranging from 12.36 s.u. to around 2.0 s.u.. The plaintiffs dispute those findings, particularly the 2.0 s.u. finding. They contend that finding was fabricated by the inspectors and that a reading of "7 s.u." was altered to read "2 s.u.". No Riverdale Mills employee was present when the 2.0. s.u. sample was taken and the EPA employees cannot identify which pH meter was used to take that sample.

Also on October 21, 1997, Riverdale Mills management personnel took Agents Granz and Pimpare on a tour of the company's wastewater treatment facility. During that tour the agents observed that the wastewater treatment system was not in operation. Plaintiffs concede that a certain valve was closed making it non-operational but dispute that the closure caused a pH of less than 5.0 s.u. to discharge into the public sewer system.

Defendants claim that, upon learning that the facility was not operational, Knott responded that it didn't matter because the wastewater would be neutralized by the time it reached the public sewer. Knott also told the inspectors that he owned the portion of Riverdale Street in which Manhole # 1 was located and that the municipal sewer ("Manhole # 2") was located 300 feet farther down the road. All testing done on that occasion was done at Manhole # 1.

As a result of the initial inspection, Agent Pimpare prepared a report and informed EPA Criminal Investigation Division Special Agent Stephen Creavin of his findings. Agent Creavin sought and obtained a federal search warrant authorizing the EPA to perform additional pH sampling and to seize documents from Riverdale Mills relating to its alleged violation of the Clean Water Act. In his affidavit for the search warrant Agent Creavin cited the pH readings taken at Manhole # 1, Knott's comments that it didn't matter that the treatment plant was not operational and Knott's claim that he owned the manhole and sewer line beneath Riverdale street.

A warrant was issued on November 6, 1997 and a search was conducted on the following day. On that day EPA employees recorded 46 pH measurements at Manhole # 1, all but one less than pH 5.0 s.u.. They took statements from Riverdale Mills employees that the wastewater plant had not been operational for some time. Plaintiffs dispute the pH readings and the condition of the wastewater plant.

Agent Creavin obtained a second search warrant and on July 17, 1998 conducted a second search to obtain evidence of the degree of groundwater infiltration of the

sewer line between Manholes #1 and #2 which Knott maintains that he owns. As a result of the evidence from the two searches, the United States Attorney's Office brought criminal charges against Knott and Riverdale Mills for violating the Clean Water Act. This civil suit followed the dismissal of those criminal charges.

## II. *Discussion*

### A. *The Summary Judgment Motions*

#### 1. *Standard of Review*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable infer-

ences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

#### 2. *The Government's Motion for Summary Judgment*

The plaintiffs have filed a claim of malicious prosecution against the United States pursuant to the FTCA. The government seeks summary judgment on that claim on the grounds that: 1) plaintiffs are estopped from arguing or proving, as they must in an action for malicious prosecution, that probable cause was lacking, and 2) even if the plaintiffs are not so estopped, probable cause was present in this case. Plaintiffs oppose the motion.

■■■ Claims brought under the Federal Tort Claims Act must be decided under the "law of the place" where the alleged tort occurred. *Abreu–Guzman v. Ford*, 241 F.3d 69, 75 (2001). Under Massachusetts law to make a claim for malicious prosecution the plaintiff must prove: 1) that the defendant initiated criminal proceedings against the plaintiff, 2) that the criminal proceedings terminated in favor of the plaintiff, 3) that there was no probable cause to initiate the criminal charge and 4) that the defendant acted with malice. *Miller v. City of Boston*, 297 F.Supp.2d 361, 366 (D.Mass.2003).

■■ The government first argues that the plaintiffs are estopped from contending that it lacked probable cause because the decision of the First Circuit Court of Appeals in *United States v. Knott*, 256 F.3d 20 (1st Cir.2001) ("*Knott I*") reversing this Court's award of attorney fees to Riverdale Mills disposed of that issue and bars

the claim. It argues that the doctrine of res judicata, or claim preclusion, bars a subsequent action whenever there is: 1) a final judgment on the merits in an earlier action, 2) sufficient identicality between causes of action asserted in both suits and 3) sufficient identicality between the parties in both actions. *In re Colonial Mortgage Bankers Corp. v. Lopez–Stubbe*, 324 F.3d 12 (1st Cir.2003).

In the instant case, the government points to the First Circuit's finding in *Knott I* that the EPA had a "reasonably sufficient evidentiary basis upon which to pursue charges against the defendants", *Id.* at 36, and argues that it is dispositive in this matter because there was a final judgment, the parties were identical and the causes of action were the same. Knott and Riverdale Mills concede that the parties are identical but dispute that the causes of action were identical. They contend that the issue in *Knott I* was *not* whether the agents lacked probable cause but whether the criminal proceeding was "vexatious, frivolous, or [brought] in bad faith." *See* 18 U.S.C. § 3006A, the so-called Hyde Amendment.

This is a close case. The First Circuit entitled a section of its opinion in *Knott I* "Evidence to Support Prosecution" and held that the defendants (Knott and Riverdale Mills) failed to meet the first part of the Hyde Amendment test of vexatiousness in that the government's prosecution did not "lack[ ] either legal merit or factual foundation." *Id.* at 34.

Although the Court of Appeals did not hold that the government had probable cause to prosecute the plaintiffs, it made an extensive analysis of the government's behavior and ultimately concluded that this Court's finding that there was no credible evidence upon which to pursue charges was "clear error". *Id.* Nevertheless, the government's contention that it is entitled to summary judgment on that question based upon res judicata must fail. The issue that was decided by the First Circuit was "vexatiousness", not probable cause. Those concepts are not identical and the defendant's motion for summary judgment will not, therefore, be allowed on grounds of res judicata.

■ The government's second argument, that it is entitled to summary judgment because it had probable cause to initiate the prosecution of Knott and Riverdale Mills, is equally problematic. The reasons enunciated by the First Circuit as to why the EPA had a "reasonably sufficient evidentiary basis upon which to pursue charges against [Knott and Riverdale Mills]", *Knott I* at 36, are also applicable and relevant to the question of whether the government had "probable cause" to prosecute Knott and Riverdale Mills.

■ Probable cause in the context of a civil action for malicious prosecution is defined as such a state of facts in the mind of the defendant "as would lead a man of ordinary caution and prudence to believe or entertain a strong suspicion that the plaintiff had committed a crime." *Carroll v. Gillespie*, 14 Mass.App.Ct. 12, 19, 436 N.E.2d 431 (1982). The burden is on the plaintiff to show that the defendant lacked probable cause. *Id.*

Knott and Riverdale Mills argue that a genuine issue of material fact exists as to whether the government, through Special Agent Creavin, had probable cause to initiate and continue the criminal prosecution. Specifically, they dispute 1) that the "anonymous claim" was anonymous, 2) the agents' observations that the wastewater treatment plant was inoperative, 3) that the alleged statements of Riverdale Mills employees were ever made and 4) the allegation that the EPA tested a discharge of 3.96 s.u. at Manhole #1 on October 21,

1997. Furthermore, the plaintiffs assert that there is a genuine issue of material fact with respect to whether Agent Creavin had probable cause to initiate criminal proceedings based solely on the report of Agents Pimpare and Granz, especially given the problems with possible alteration to pH readings and the legality of the warrantless search on October 21, 1997.

Demonstrating probable cause to prosecute is a relatively low threshold to cross and the government's arguments, not to mention the implications raised by the First Circuit in *United States v. Knott,* 256 F.3d 20, 34–36 (1st Cir.2001), are valid. Equally compelling, however, is the plaintiffs' assertion that the prosecution would not have been initiated but for the alleged malfeasance of Agents Pimpare and Granz at the October 21, 1997 unauthorized inspection.

Knott and Riverdale Mills not only assert that Agents Pimpare and Granz manipulated data at the plant (very troublesome if true) but also argue that Agent Creavin, the person the government admits was responsible for the criminal investigation, knew or should have known that the data was unreliable. Those questions are sufficient to raise a genuine issue of material fact as to whether the government had probable cause to prosecute the plaintiffs and, accordingly, its motion for summary judgment will be denied.

### 3. *The Motion of Defendants Pimpare and Granz for Summary Judgment*

Plaintiffs' complaint invokes the Court's implied power described in *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to find that Agents Pimpare and Granz violated the plaintiffs' Fourth Amendment rights to be free from unreasonable searches during the October 21, 1997 inspection at Riverdale Mills. The individual defendants have

filed a motion to for summary judgment arguing that they are entitled to qualified immunity for their actions. The plaintiffs oppose this motion.

Agents Pimpare and Granz contend that the plaintiffs' claims based upon the Fourth Amendment must be dismissed because the October 21, 1997 inspection did not violate any clearly established Fourth Amendment right. They claim that 1) it is unclear that Knott's consent to conduct the inspection was conditional, 2) plaintiffs had no reasonable expectation of privacy in wastewater discharged into the public sewer system and 3) even if the plaintiffs had a reasonable expectation of privacy, the law was not clearly established in that regard at the time of the search. Agent Pimpare also argues that plaintiffs cannot recover against him because he did not personally participate in the conduct plaintiffs claim was unlawful.

Plaintiffs respond that 1) the law was clearly established that a warrantless search of commercial premises was *per se* unreasonable under the Fourth Amendment, 2) it is objectively unreasonable for the agents to assert that the unaccompanied sampling at Manhole # 1 satisfied the inspection conditions imposed by Knott, 3) the agents did not show that their failure to comply with those conditions was excusable because their sampling was analogous to certain warrantless searches found to be unlawful, and 4) the agents incorrectly contend that no warrant was required because Riverdale Mills is a "pervasively regulated business".

 The major issue with respect to this motion is whether the defendants are entitled to qualified immunity and thus immune to suit for the warrantless search of Riverdale Mills on October 21, 1997. The doctrine of qualified immunity provides that government officials performing

discretionary functions are shielded from liability for civil damages under certain circumstances. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a claim for qualified immunity, a court must determine: 1) whether the plaintiff's allegations, if true, establish a constitutional violation, 2) whether the right was clearly established at the time of the alleged violation, and 3) "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right." *Kauch v. Department For Children, Youth and Their Families,* 321 F.3d 1, 4 (1st Cir.2003). The answer to each inquiry must be affirmative to overcome a defense of qualified immunity. *Id.*

The Court is underwhelmed by defendants' arguments that they are entitled to qualified immunity. Plaintiffs' allegation that Agents Granz and Pimpare exceeded the scope of Knotts' consent, if true, constitutes a violation of the defendants' Fourth Amendment rights. Neither of the contentions that the wastewater is analogous to trash left at the curbside or that Riverdale Mills is a "pervasively regulated business" is compelling. Agents Pimpare and Granz have not shown that the unauthorized inspection fell into one of the narrow exceptions to the search warrant requirement, and, consequently, the first prong of the qualified immunity test must be answered in the affirmative. Similarly, there can be no doubt that the law regarding the necessity for a search warrant is clear.

The only remaining question is whether a reasonable officer, similarly situated, would understand that the challenged conduct violated the plaintiffs' rights. It is clear to this Court that a reasonable officer should have known that exceeding the scope of Knott's consent to inspect violated his and Riverdale Mills' rights. The fact that the inspectors sought consent for the October 21 inspection in the first place and obtained a warrant for the November 7 search indicates that an objectively reasonable inspector would have known that the unauthorized inspection was unlawful. Accordingly, Agents Pimpare and Grantz are not entitled to qualified immunity and their motion for summary judgment will be denied.

### D. *Motion of Defendant Creavin for Summary Judgment*

Plaintiffs' complaint invokes the Court's implied power, described in *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to find that defendant Stephen Creavin violated their Fourth Amendment rights. Plaintiffs contend that he did so by submitting affidavits for search warrants that contained falsehoods and omissions which misled the Magistrate Judge into authorizing searches of Riverdale Mills on November 7, 1997 and July 19, 1998. Plaintiffs also allege that the execution of the search warrant violated their Fourth Amendment rights and that Agent Creavin violated their Fifth Amendment rights by undertaking a selective prosecution against them. Agent Creavin moves for summary judgment on the grounds that he is entitled to qualified immunity on the charges and that, in any event, the plaintiffs are not entitled to relief under *Bivens* for the Fifth Amendment claims. Plaintiffs oppose the motion.

#### a. The Affidavits

Agent Creavin argues that he is entitled to qualified immunity against the charge that he violated the plaintiffs' Fourth Amendment rights by submitting false affidavits in support of a search warrant. Plaintiffs once again rely on their arguments in opposition to the government's

motion for summary judgment but this time the argument is unpersuasive.

Even though, as the Court has found, there is a genuine issue of material fact as to whether the government had probable cause to prosecute Knott and Riverdale Mills, the question here is whether Agent Creavin had probable cause to file an affidavit and obtain a search warrant for the searches on November 7, 1997 and July 19, 1998. The Court finds that Agent Creavin is entitled to qualified immunity for that action.[1]

 Agent Creavin argues convincingly that he did not violate anyone's Fourth Amendment rights in his application for the search warrants. The United States Supreme Court, in *Franks v. Delaware*, 438 U.S. 154, 164, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), held that the use of false statements to obtain a search warrant violates the Fourth Amendment warrant requirement. The substance of the allegedly false statement must, however, relate to the establishment of probable cause and it is not enough to allege negligence or innocent mistake. *Id.* at 171–172, 98 S.Ct. 2674. *See also, Aponte Matos v. Toledo Davila*, 135 F.3d 182, 187 (1st Cir. 1998). Therefore, if the affidavit without the allegedly false statement would support a finding of probable cause, the *Franks* challenge fails. *United States v. Parcels of Land*, 903 F.2d 36, 47 (1st Cir. 1990).

 Agent Creavin first claims that he made *no* statements in his affidavit that he knew or should have known were false. Criminal investigators seeking warrants are entitled to rely on representations made to them by personnel employed by their own agency. *Liu v. Phillips*, 234 F.3d 55, 57–58 (1st Cir.2000). Agent Creavin asserts that he drafted his affidavit based upon Agent Pimpare's report, not the actual field logs, and thus did not know that there were purported alterations to the pH readings. He contends he was entitled to rely on the report and had no reason to suspect its possible falsity.

Agent Creavin argues, in the alternative, that even if he should have known about the alleged discrepancies in the pH readings, the affidavit contained more than sufficient facts to establish probable cause to search Riverdale Mills. The magistrate was informed that the wastewater system at Riverdale Mills was inoperative on October 21, 1997, and that Knott had said it didn't matter. Creavin had other pH readings at Manhole # 1, including one of 3.96 s.u., that were not seriously questioned. Given the information in his possession and the fact that even one reading below pH 5.0 s.u. is sufficient to constitute a violation of the Clean Water Act, Creavin had probable cause to apply for *search warrant*, even without the problematic pH 2.0 s.u. reading. Creavin did not violate plaintiffs' Fourth Amendment rights and, accordingly, his motion for summary judgment with respect to this issue will be allowed.

b. The Execution of the Search Warrants.

 In their complaint, plaintiffs assert that Creavin violated their Fourth Amendment rights in the manner in which he executed the November 7 search warrant. Essentially, they suggest that the method in which Creavin conducted the search was unreasonable. They specifically object to the fact that Creavin brought with him a team of agents, some armed,

---

1. This Court limits its discussion to the affidavit in support of the November 7 search warrant because the plaintiffs have made no substantive argument relative to the July 19 search warrant.

that he videotaped and photographed the execution of the search warrant and that he allegedly failed to show Knott the search warrant immediately upon his arrival at the scene. Creavin seeks summary judgment that he did not violate the defendants constitutional rights in the process of executing the search warrant and that even if he did, he is entitled to qualified immunity.

██ Plaintiffs do not address that issue in their response beyond a bald assertion that Creavin's behavior was "unreasonable." In order to maintain such claims, plaintiffs must demonstrate that Creavin's acts were unreasonable in light of the specific conditions he faced. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Because plaintiffs have neither shown that Creavin's actions were unreasonable nor highlighted a genuine issue of material fact as to this claim, Creavin's motion for summary judgment on the claim related to the execution of the warrant will be allowed.

c. Fifth Amendment Claims

██ Plaintiffs' *Bivens* action under the Fifth Amendment is a claim of selective prosecution, namely that Creavin should not have brought a criminal action against them. Because it was the United States Attorney, not Creavin, who ultimately decided to press criminal charges against the plaintiffs, it cannot be reasonably asserted that Creavin violated the Fifth Amendment rights of Knott or Riverdale Mills. Moreover the law was not, and is not, settled that an investigative officer of an administrative agency such as the EPA can be held liable for selective prosecution. Indeed, some courts have explicitly held that investigating agents cannot be held liable for selective prosecution because they do not make the actual decision to prosecute. *See, United States v. Hastings,*

126 F.3d 310, 314 (4th Cir.1997); *United States v. Spears,* 159 F.3d 1081, 1087 (7th Cir.1998). Accordingly, Creavin's motion for summary judgment on the Fifth Amendment claim will be allowed.

Based upon the foregoing, Agent Creavin's motion for summary judgment will be allowed in its entirety.

## ORDER

For the reasons stated in the foregoing memorandum, the government's motion for summary judgment (Docket No. 64) is DENIED; the motion of individual defendants Pimpare and Granz for summary judgment (Docket No. 67) is DENIED; and the motion of defendant Creavin for summary judgment (Docket No. 69) is ALLOWED.

**So ordered.**