# United States Court of Appeals
## For the First Circuit

No. 16-1107

JOEL DÍAZ-NIEVES; GIOVANNY DÍAZ-NIEVES;
AIDA NIEVES-PÉREZ; SAÚL DÍAZ-RODRÍGUEZ,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Raúl S. Mariani-Franco, for appellants.
Mainon A. Schwartz, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

June 5, 2017

**TORRUELLA**, **Circuit Judge**.  Plaintiff Joel Díaz-Nieves ("Joel") appeals from the district court's grant of partial summary judgment in favor of defendant-appellee the United States, dismissing his false arrest, false imprisonment, and malicious prosecution claims.  Co-plaintiffs, Joel's parents, Saúl Díaz-Rodríguez and Aida Nieves-Pérez, and Joel's brother, Giovanny Díaz-Nieves,[1] (collectively hereinafter his "family" or "relatives") also appeal, challenging the district court's dismissal of their derivative and independent tort claims under Fed. R. Civ. P. 12(c).  After careful consideration, we affirm.

## I. Background

### A. Factual Background

This case originates under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, concerning an arrest made during "Operation Guard Shack," a reverse sting operation launched by the Federal Bureau of Investigation ("FBI") with the goal of identifying corrupt police and corrections officers in Puerto Rico.[2]  In July 2010, a corrections officer falsely claiming

---

[1]  Because Joel Díaz-Nieves and Giovanny Díaz-Nieves are brothers with the same last name, and their parents have similar last names, we refer to plaintiffs-appellants by their first names in order to distinguish them.  We mean no disrespect in doing so.

[2]  "Operation Guard Shack" has been described in detail in other cases arising out of the same operation.  See United States v. Díaz-Castro, 752 F.3d 101 (1st Cir. 2014); United States v. Delgado-Marrero, 744 F.3d 167 (1st Cir. 2014); United States v.

to be Joel Díaz-Nieves participated in Deal 105 of Guard Shack (a controlled buy of fake cocaine). The government verified that a man by that name did work for the Department of Corrections and requested his employee file, among other records. On August 5, 2010, the FBI received Joel's employment file, which included his picture. Joel Díaz-Nieves was indicted and a warrant was issued for his arrest. Nothing in the record suggests that at the time they sought the warrant the FBI agents knew that Joel Díaz-Nieves was not the real name of the corrections officer that had participated in Deal 105.

On October 6, 2010, the FBI agents executed the arrest warrant at Joel's home. Joel lived with his parents, Saúl and Aida, and his brother, Giovanny. Saúl opened the door and, with a gun pointed at him, was made to stand against an exterior wall. At some point, his pants fell to the ground and he was left standing naked in the street. Aida was also ordered to face a wall. Giovanny observed laser sights on his head and chest upon exiting to the balcony of his house. Joel, who was a Department of Corrections officer and had no previous criminal record, located his work weapon and headed to the front door. There, Joel observed

---

Díaz-Maldonado, 727 F.3d 130 (1st Cir. 2013).

laser sights on his body coming from the FBI agents' weapons; consequently, he surrendered and was arrested.

Joel asked why he had been arrested and was told by FBI agents that he had been charged with drug trafficking, which he denied. An agent showed Joel a photograph taken from a video recording of Deal 105, which showed a man involved in a drug transaction, but Joel said he was not the man in the photo. Joel was processed and interviewed by the FBI, and he continued to assert his innocence. He was detained in the Metropolitan Detention Center in Guaynabo, Puerto Rico for three days. Joel's family retained a lawyer and paid fees for appraisals of properties in anticipation of obtaining bail. On October 9, 2010, Joel was released from custody. The FBI eventually discovered that the corrections officer claiming to be Joel Díaz-Nieves was in fact another corrections officer named José Nieves-Vélez ("Nieves-Vélez"), who had used Joel's name to shield his identity. Nieves-Vélez was arrested on October 12, 2010. The following day, the government moved to dismiss the indictment as to Joel.

## B. Procedural History

On March 14, 2013, Joel and his family (collectively, the "Plaintiffs") filed a complaint alleging that, as a result of Joel's arrest, they had suffered damages and injuries compensable

-4-

under the FTCA.[3]  Specifically, Joel asserted claims of negligent investigation, false arrest, false imprisonment, and malicious prosecution.  His relatives asserted derivative claims for the actions against Joel and independent claims of excessive use of force under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.  On November 26, 2013, the United States filed a motion to dismiss Joel's negligent investigation, false arrest, and false imprisonment claims.  The Plaintiffs opposed the motion to dismiss.  On July 9, 2014, the district court dismissed the negligent investigation claim because it was "jurisdictionally barred by the discretionary function exception to the FTCA," but refused to dismiss at that stage Joel's claims of false arrest and false imprisonment.[4]

After discovery was completed, the parties filed cross-motions for partial summary judgment.  In its motion, the United States requested the dismissal of only Joel's claims.  On July 1, 2015, the district court denied Joel's motion for partial summary judgment and granted the United States' motion for partial summary

---

[3]  The complaint was amended on April 11, 2013.

[4]  The district court stated that because the Plaintiffs had only sued the United States and their allegations did not support constitutional violations, it would read "the complaint only to allege violations sounding in tort against the United States pursuant to the FTCA."

judgment, dismissing Joel's only remaining claims of false arrest, false imprisonment, and malicious prosecution. The district court denied Joel's subsequent motion for reconsideration.

The case continued as to Joel's relatives. On September 18, 2015, the government filed a motion to dismiss the remaining claims. The relatives opposed the motion. On December 14, 2015, the district court granted the government's motion, which it treated as one for judgment on the pleadings, finding that the relatives had failed "to state a[ny] plausible claim for relief." Accordingly, the district court entered judgment dismissing the complaint in its entirety. Plaintiffs timely appealed.

On appeal, Joel challenges the granting of partial summary judgment dismissing his false arrest, false imprisonment, and malicious prosecution claims under the FTCA.[5] In turn, his relatives challenge the district court's dismissal of their independent claims for excessive use of force and their derivative claims due to Joel's arrest.

---

[5] Joel did not appeal the dismissal of his claim for negligent investigation.

## II. **Discussion**

**A. Joel's Claims**

This court reviews de novo the grant of a motion for summary judgment. Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 558 (1st Cir. 2010). Typically, this court will reverse a district court's grant of summary judgment "only if, 'after reviewing the facts and making all inferences in favor of the non-moving party . . . , the evidence on record is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'" Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (quoting Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)). The presence of cross-motions does not alter this general standard. "Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank N.A., 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry., 100 F.3d 228, 230 (1st Cir. 1996)).

The FTCA provides a limited congressional waiver of the sovereign immunity of the United States for tortious acts and omissions committed by federal employees acting within the scope of their employment. Domínguez v. United States, 799 F.3d 151, 153 (1st Cir. 2015) (citing 28 U.S.C. §§ 1346(b)(1), 2645). Under

the statute, the United States may be held civilly liable in the same manner and to the same extent as a private individual under like circumstances.  Solís-Alarcón v. United States, 662 F.3d 577, 582 (1st Cir. 2011) (quoting Abreu-Guzmán v. Ford, 241 F.3d 69, 75 (1st Cir. 2001)).  The FTCA is strictly construed in favor of the federal government.  Holloway v. United States, 845 F.3d 487, 489 (1st Cir. 2017).

The FTCA exempts intentional torts from its sovereign immunity waiver but expressly allows actions against the United States for claims of "'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution' arising out of 'acts or omissions of investigative or law enforcement officers of the United States Government.'"  Solís-Alarcón, 662 F.3d at 583 (quoting 28 U.S.C. § 2680(h)).  The "law of the place" where the alleged act or omission occurred governs actions under the FTCA. Calderón-Ortega v. United States, 753 F.3d 250, 252 (1st Cir. 2014) (citing 28 U.S.C. § 1346(b)(1)).  Here, then, we look to Puerto Rico tort law.

**1. False Arrest / False Imprisonment Claim**

Joel alleges the district court erred in granting summary judgment for the government and dismissing his false arrest and false imprisonment claims under the theory that an arrest made pursuant to an arrest warrant issued with probable cause is

conditionally privileged and forecloses his false arrest and false imprisonment claims. He argues that in so holding the district court misapplied Puerto Rico law, specifically the Puerto Rico Supreme Court's holding in Valle v. Commonwealth of Puerto Rico, 157 P.R. Dec. 1 (2002). According to Joel, applying Puerto Rico law would have required him to merely prove that the agents acted negligently, he suffered damages, and his damages were caused by the agents' negligent actions. Joel argues that he satisfied his burden of proof under this test. He stresses that the agents' negligent actions consisted of failing to corroborate whether the person depicted in Deal 105 was Joel by comparing the photograph in Joel's employee file obtained in August 2010 with the video recorded of Nieves-Díaz participating in Deal 105 in July 2010. This, in turn, improperly caused the return of an indictment and issuance of an arrest warrant against Joel.

Under Puerto Rico law, false arrest and false imprisonment claims have identical elements, therefore courts treat them as identical causes of action. Abreu-Guzmán, 241 F.3d at 75. Thus, for the sake of simplicity we refer to Joel's claims for false arrest and false imprisonment as one for false arrest. A claim for false arrest arises, as defined by the Puerto Rico Supreme Court, when "[a] person, whether or not a law enforcement officer, may by himself or through another one unlawfully detain

-9-

or cause the unlawful detention of another person.  In both cases, said person would be liable for damages if said action is tortious or negligent."  Ayala v. San Juan Racing Corp., 12 P.R. Offic. Trans. 1012, 1021 (1982).  For the claim to go forward, it is essential that the individual performing the arrest lack reasonable cause for believing that the arrestee committed a felony.  Abreu-Guzmán, 241 F.3d at 75 (noting that false arrest and false imprisonment claims "focus on whether the arresting officer 'lacked reasonable cause for believing that [the suspect] committed a felony'" (alteration in original) (quoting Harrington v. United States, 748 F. Supp. 919, 933 (D.P.R. 1990))).

In Rodríguez v. United States, 54 F.3d 41 (1st Cir. 1995), this court considered for the first time a false arrest claim under Puerto Rico law, based on the execution of a valid arrest warrant against the wrong person.  There, a Puerto Rican woman who had been arrested by federal agents on the mistaken assumption that she was the person identified in a valid warrant, sued under the FTCA for false arrest.  The plaintiff had the same name, social security number, birthplace, birthdate, and general physical features (with some slight discrepancies) as the person named in the warrant.  Id. at 42-43.  In addition, both women had a sister with the same name and their parents were deceased.  Id. In determining the applicable law, this court noted that "careful

research ha[d] disclosed no reported Puerto Rico Supreme Court decision addressing [the issue]" and pointed out that "[a]s a general matter, however, the Puerto Rico Supreme Court has conformed its limited 'false arrest' jurisprudence to common law principles." Id. at 45. "Accordingly, consistent with our longstanding practice in cases where the Puerto Rico court has not diverged from common law principles, . . . we adopt[ed] the Restatement (Second) of Torts, §§ 35-45A, 112-36, as the appropriate framework" for analysis of the false arrest claim at issue in Rodríguez. Id. (citations omitted). Under that framework, generally "an arrest conducted pursuant to a valid warrant is conditionally privileged, and no false arrest liability lies against the officers responsible." Id. (citing Restatement (Second) of Torts §§ 118, 122 (1965)).

The "conditional privilege" doctrine protects officers from liability if the arrestee was:

> (a)    . . . a person sufficiently named or otherwise described in the warrant and [was] reasonably believed by the [officer] to be, the person intended, or
>
> (b)    although not such person, . . . knowingly caused the actor[s] to believe [her] to be so.

Id. at 46 (alterations in original) (quoting Restatement (Second) of Torts § 125). Accordingly, an officer "is privileged to arrest the person to whom the name [in the warrant] applies with complete accuracy, although the [officer] may have reason to suspect that

-11-

a mistake has been made, and that the person, though accurately named, is not the person intended."  Id. (alterations in original) (quoting Restatement (Second) of Torts § 125 cmt. f).  Applying this doctrine, this court concluded in Rodríguez that the officer had acted reasonably inasmuch as the arrestee had similar or identical physical and personal characteristics as the person named in the warrant and, thus, "the United States was entitled to rely on the privilege which attached to the arresting deputy marshals as a complete defense to liability for false arrest." Id. at 46-47.

The facts in this case are similar to those in Rodríguez. Here, Joel was arrested by federal agents pursuant to a valid arrest warrant that had his name, on the mistaken assumption that he was the person who had committed the crime.  Joel essentially concedes that if Rodríguez is still good law, his arrest would have been conditionally privileged and the government would not be liable for false arrest.  He argues, however, that Rodríguez is no longer good law after the Puerto Rico Supreme Court case of Valle, which, according to him, binds us to reach a different conclusion.  The government, on its part, argues that Valle is clearly distinguishable and does not change the scenario outlined in Rodríguez.

In Valle, an arrest warrant was issued against one "John Doe I." 157 P.R. Dec. at 6. Law enforcement agents went into Valle's residence to execute the warrant allegedly issued against him (which named "John Doe I") for violations of the Puerto Rico Controlled Substances Act. Id. The news media was present during the arrest operation, which was broadcast by television networks in Puerto Rico and the United States, and Valle was identified as a drug dealer. Id. at 10-11. Valle was arrested and remained incarcerated for three days until he was able to secure bond. Id. at 7.[6] During the preliminary hearing, an undercover agent stated that Valle was not the person with whom he had engaged in the drug transaction underlying the arrest warrant. Id. The judge found no cause to prosecute Valle and dismissed all charges pending against him. Id. Valle then filed a false arrest claim against the Commonwealth of Puerto Rico. Id. At trial, the Commonwealth introduced as evidence a surveillance report that described "John Doe I" as approximately 21 years old, weighing approximately 130 pounds, and standing about 5'5" tall. Id. at 8. Valle, however, was 23 years old, about 6'0" tall, and weighed around 180 pounds.

---

[6] According to Valle, while in jail, he was physically and sexually assaulted by other inmates. Valle, 157 P.R. Dec. at 11 n.6. He also claimed that people treated him differently after his arrest, and that he had not been able to obtain a job. Id. at 11.

Id.  The undercover agent testified at trial that after the drug transaction took place, he did not personally participate in Valle's identification process or in the operation that led to his arrest; thus, he was not at the scene to identify Valle.  Id. at 9.  The undercover agent tried to justify Valle's arrest on the fact that he "had a yellow Ford Splash truck that was registered under his name in the Department of Transportation and Public Works, and that this vehicle was similar to the one driven by the person with whom [the undercover agent] actually made the transaction."  Id.  Another witness testified that he showed the undercover agent the picture of Valle that was on file in the Department of Transportation and Public Works and that the undercover agent told him he bore some resemblance to the person he had dealt with.  Id.

In Valle the Puerto Rico Supreme Court reiterated the elements of a tort claim under Puerto Rico law,[7] but clarified that

---

[7]  To wit, the need "to prove (a) the occurrence of an act or omission resulting in the illegal or noncontractual act; (b) the illegal nature of said act or omission; (c) the fault or negligence of the agent; (d) the occurrence of damage; and (e) a causal relationship between the act or omission and the damage."  Id. at 14 (emphasis omitted).  It also clarified that "a cause is not every condition without which the damage would not have been produced, but that which ordinarily produces it according to the general experience."  Id. at 19 (citing Toro Aponte v. Commonwealth of Puerto Rico, 42 P.R. Offic. Trans. __, 142 P.R. Dec. 464, 474 (1997)).

-14-

it needed to "strike a fair and appropriate balance between the right of the State to act vigorously in the investigation and prosecution of criminal causes and the right to liberty of our fellow citizens." Id. at 22-23 (emphasis omitted). There, the court distinguished between situations in which a suspect's identity is clear and the suspect is thus identified by his or her name, and those situations in which all that is available is a nickname or physical description of the suspect. Id. at 21-22. The court clearly stated that in the latter, which was the situation present in Valle, officers will be found liable for false arrest if they are negligent by failing to take the necessary steps to validate the suspect's identity.[8] Id. at 24. The court then concluded that, inasmuch as the identification efforts made in Valle consisted of writing down a license plate number of a truck, checking who it belonged to in the Department of Transportation and Public Works files, and showing a picture of the truck owner to the undercover agent (without then following up when the agent

---

[8] Such measures may include: having "the agents who supervise the undercover agents . . . take pictures from a distance of the person involved in the criminal act; [following] the criminal to his or her residence or workplace"; having the undercover agent "identify the criminal from a distance, and, at the very least, if it has not been possible to fully identify the criminal, on the day of the arrest -- when there is already no reason to continue protecting the identity of the undercover agent -- the agent must be present in order to identify or point at the person to be arrested." Id. at 22 (emphasis omitted).

-15-

raised a red flag that the man in the picture "had some resemblance" with the man that participated in the drug transaction), the agents involved in the operation that led to Valle's arrest "did not fully comply with the[ir] obligation." Id. at 23 (emphasis omitted). They "took the 'easiest way out'; in other words, they made an extremely minimum effort, 'as if to get it over with,' to carry out an identification procedure they had a duty to follow thoroughly." Id.

Valle is silent, however, as to what circumstances would lead to a finding of negligence, and thus liability, in cases where an arrest warrant adequately identifies and names a suspect, such as in the instant appeal, where the arrest warrant did not rely on a nickname or description to identify the subject, but rather explicitly named "Joel Díaz Nieves." Thus, contrary to Joel's contentions, Valle is not controlling and does not alter our holding in Rodríguez.

Our post-Valle decision in Solís-Alarcón, 662 F.3d 577, also supports our conclusion that Rodríguez is still good law. In Solís-Alarcón, agents of the Drug Enforcement Administration ("DEA") and Puerto Rico police officers went to Solís's residence to arrest an individual, who they had "ample reason to believe" had engaged in drug transactions, and a warrant had been issued for his arrest. 662 F.3d at 579. The agents believed they would

-16-

find the individual at Solís's house, based on events that occurred earlier in the year.  Id.  Although the agents had no warrant to search the house, they searched it looking for the individual and seized a sport utility vehicle believed to have been used in a drug crime.  Id. at 580.  The individual was nowhere to be found.  Id.  Solís and his wife sued the government and DEA agents asserting tort claims against the United States for the agents' conduct under the FTCA.  The district court dismissed their claim.  On appeal, this court applied the common law approach discussed in Rodríguez and affirmed, finding that the officers were not liable because they had acted under the reasonable belief that the suspect was inside the house.  Id. at 583-84.  We found Rodríguez to be consistent with Valle, and held that "[although] Puerto Rico imposes liability for fault or negligence that causes injury, . . . protecting law enforcement agents for reasonable mistakes is common."  Id. at 583 (citing Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009)).  We "assumed that Puerto Rico tort law would not impose personal liability for mistaken arrests where the officers would be protected . . . by qualified immunity" inasmuch as an opposite position might raise "a significant question" of "whether any local court could impose damage liability on federal officers where they would be exempt in a federal lawsuit and whether

Congress under the FTCA would expect the federal government to shoulder such liability."  Id. at 583-84 (citations omitted).

Under Rodríguez and Solís-Alarcón, and consistent with the statements made in Valle regarding the need to balance the right to compensation with the interest or duty of investigating criminal causes, we hold that the arresting officers had reasonable belief that they were arresting Joel pursuant to a valid arrest warrant based on probable cause. Thus, his arrest was conditionally privileged, which forecloses his false arrest claim.

**2. Malicious Prosecution Claim**

Joel seems to argue that the district court also erred in dismissing his malicious prosecution claim.  According to him, viewing all the facts and drawing all reasonable inferences in the light most favorable to him would have required the district court to deny summary judgment as to this claim.  He points out that since July 2010 the FBI possessed a video recording of Nieves-Vélez participating in Deal 105 and the FBI also obtained Joel's photograph in August 2010, when the FBI got his personnel record from the Puerto Rico Department of Corrections to verify that Joel was indeed a corrections officer.  Thus, Joel argues, the FBI could have compared the two images prior to September 21, 2010, when the indictment was issued.  By failing to do so, his argument goes, the FBI was negligent, submitted "false/incorrect evidence"

to the grand jury, and caused an indictment to be improperly obtained, which gives rise to a malicious prosecution claim. We disagree.

Under Puerto Rico law, to prove a malicious prosecution claim, the moving party must show that officers "acted with malice and without probable cause, defined as 'a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.'" Abreu-Guzmán, 241 F.3d at 75 (quoting Lora-Rivera v. Drug Enforcement Admin. Dep't of Justice, 800 F. Supp. 1049, 1051-52 (D.P.R. 1992)). To succeed on a malicious prosecution claim, the claimant must prove four elements: "(1) that a criminal action was initiated or instigated by the defendants; (2) that the criminal action terminated in favor of plaintiff; (3) that defendants acted with malice and without probable cause; and (4) that plaintiff suffered damages." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting González Rucci v. U.S. I.N.S., 405 F.3d 45, 49 (1st Cir. 2005)). "The third element may also be described as two separate elements because plaintiff must show both that the defendant acted with malice and that he acted without probable cause." Rivera-Marcano v. Normeat Royal Dane Quality, 998 F.2d 34, 37 (1st Cir. 1993) (emphasis in the original) (citing Vince v. Posadas de P.R. S.A., 683 F. Supp. 312, 315 & n.4 (D.P.R. 1998)). "For purposes

of malicious prosecution, Puerto Rico courts equate malice with bad faith."  Paret-Ruiz v. United States, 827 F.3d 167, 178 (1st Cir. 2016) (quoting Barros-Villahermosa, 642 F.3d at 59).  "[A] grand jury indictment definitively establishes probable cause" unless "law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury."  González Rucci, 405 F.3d at 49.

Joel's claim for malicious prosecution falters on the third element because he has failed to show that officers acted without probable cause and with malice.  To the contrary, the record shows that Joel was named in the indictment and, "[g]enerally, a grand jury indictment definitively establishes probable cause."  Id.  Although "courts have recognized an exception if law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury," id., nothing in the record suggests that the FBI agents knowingly presented false information to the grand jury.  This is buttressed by Joel's concession that the FBI determined the actual identity of the impersonator after Joel's arrest, which supports the government's argument that the agents did not "knowingly present" false testimony to the grand jury.  In addition, although Joel claims that the agents were negligent by failing to compare the images prior to providing evidence to the grand jury, mere

negligence does not equate to malice.[9]  See Jiménez v. Sánchez, 60 P.R. 406, 409-10 (1942), 1942 WL 6900 (P.R.) ("[T]he element of malice, so essential in [malicious prosecution] cases, should not be confused with mere negligence, inasmuch as the characteristic of negligence is 'inadvertence,' or an absence of an intent to injure, whereas the characteristic of malice is the improper purpose to vex, prejudice, damage, [and] injure." (quoting with approval the lower court's judgment)).  Accordingly, the district court did not err in summarily dismissing Joel's malicious prosecution claim.

**B. The Relatives' Claims**

We now turn to consider the district court's entry of judgment on the pleadings dismissing the claims of Joel's relatives.  This court reviews the grant of judgment on the pleadings de novo.  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  A motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings is treated like a Rule 12(b)(6) motion to dismiss.  Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007).  Accordingly, "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom."  Pérez-Acevedo, 520 F.3d at

---

[9]  Furthermore, Joel conceded at oral argument that "there is no allegation of maliciousness" here.

29. We will affirm a dismissal on the pleadings if it appears that the nonmovant could prove no set of facts that would entitle him or her to relief. Mass. Nurses Ass'n v. N. Adams Reg'l Hosp., 467 F.3d 27, 31 (1st Cir. 2006) (citing Rivera-Gómez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

Joel's relatives allege that the district court erroneously dismissed their derivative claims under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. They concede that their derivative claims are tied to the viability of Joel's FTCA claims and thus will suffer the same fate as Joel's, but argue that because Joel's claims were improperly dismissed and thus should be reinstated, their derivative claims should also be reinstated. In addition, Joel's relatives allege that the district court also erred by dismissing their independent claims for damages allegedly suffered due to the agents' "excessive use of force" during the execution of Joel's arrest warrant. We address these arguments in turn.

Under Article 1802 of the Puerto Rico Civil Code -- Puerto Rico's General Tort Statute -- "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id. The Puerto Rico Supreme Court has held that individuals who are harmed because a close relative or loved one is tortiously injured may invoke

Article 1802 as a vehicle for prosecuting a cause of action against the tortfeasor. Santini Rivera v. Serv Air, Inc., 137 P.R. Dec. 1, 10 (1994). To prevail on such a claim, "a plaintiff must prove (1) that he has suffered emotional harm, (2) that this harm was caused by the tortious conduct of the defendant toward the plaintiff's relative or loved one, and (3) that the defendant's conduct was tortious or wrongful." Méndez-Matos v. Municipality of Guaynabo, 557 F.3d 36, 57 (1st Cir. 2009). This cause of action is wholly derivative and depends on the viability of the underlying claim of the relative or loved one. Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12-13 (1st Cir. 2007). Because, as previously discussed, the district court correctly dismissed Joel's claims, the derivative claims of his relatives were also properly dismissed.

Finally, Joel's relatives argue that the following facts give rise to an independent claim for damages under Article 1802 of the Puerto Rico Civil Code due to the agents' alleged excessive use of force when executing Joel's arrest warrant: "immediately upon opening the door of the house[, Saúl] was forcibly taken out and at gunpoint made to stand against a wall" while his family watched; at some point his pants fell to the ground and he "was left naked outside his house in full view of his family and neighbors"; Aida was also forced (at gunpoint) to face a wall;

-23-

Giovanny "saw how he was targeted by [] dozens of laser sights on his head and chest upon exiting the balcony of his house"; they all witnessed how the agents surrounded their house and "feared for their life, their physical integrity," and those of their loved ones. These facts fail to state a plausible claim for relief.

Joel's relatives did not cite any authority suggesting that the manner in which Joel's arrest warrant was executed was tortious under Puerto Rico law and would result in private liability. They merely referenced Pueblo v. Alcalá, 9 P.R. Offic. Trans. 430, 437 (1980), for the proposition that "the conduct of the intervening officer will be evaluated under the reasonable person standard based on the circumstances surrounding his/her intervention." Moreover, the pleadings show that the agents knew Joel was a corrections officer and carried a weapon. In fact, upon noticing the presence of third parties in the premises of the house, Joel grabbed his weapon. Furthermore, Joel's relatives did not allege that physical contact occurred between them and the arresting officers. In sum, the actions taken by the arresting officers were based on their reasonable (and correct) belief that Joel was armed, Maryland v. Buie, 494 U.S. 325, 334 (1990) (stating that "arresting officers are permitted [when conducting in-home arrests] to take reasonable steps to ensure their safety"), and Joel's relatives reference nothing beyond the general Puerto Rico

-24-

negligence statute to support their claims, <u>Bolduc</u> v. <u>United States</u>, 402 F.3d 50, 58 (1st Cir. 2005) (noting that a plaintiff bringing suit under the FTCA must show that "state law would impose liability on a private person in the same or similar circumstances" and rejecting the contention that "stating . . . a claim for negligence . . . automatically mean[s] that liability would attach under [state] law").  Accordingly, the district court did not err in dismissing the independent claims asserted by Joel's relatives.

### III. <u>Conclusion</u>

For the reasons stated above, the orders of the district court granting partial summary judgment for the government and entering judgment on the pleadings are affirmed.

**<u>Affirmed</u>.**