# United States Court of Appeals
## For the First Circuit

No. 17-1838

SANTOS ESCALERA-SALGADO; OLGA PAGÁN-TORRES;
J.E.P., Minor; D.E.P., Minor,

Plaintiffs, Appellants,

v.

UNITED STATES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Guillermo Ramos Luiña for appellants.
Brad Hinshelwood, Attorney, Appellate Staff, Civil Division,
U.S. Department of Justice, with whom Chad A. Readler, Acting
Assistant Attorney General, Rosa Emilia Rodríguez-Vélez, United
States Attorney, and Mark B. Stern, Attorney, Appellate Staff,
Civil Division, U.S. Department of Justice, were on brief, for
appellee.

December 19, 2018

**KAYATTA**, **Circuit Judge**.  Santos Escalera-Salgado, his wife, and their two minor children sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, seeking to recover damages for injuries suffered when a Department of Homeland Security agent shot Escalera during the execution of a search warrant at Escalera's residence.  The district court entered judgment for the United States after a bench trial.  For the following reasons, we affirm.

## I.

On October 29, 2011, Puerto Rico Police Department officers and U.S. Homeland Security Investigations (HSI) agents convened to execute a search warrant at Escalera's residence.[1] Puerto Rico Police Department officers informed the HSI agents that Escalera was a drug trafficker and a gang leader, and that he had large amounts of drugs, firearms, and cash stashed at his residence.  Because of these risk factors, HSI was tapped to "clear" the residence before local police conducted the search. Before daylight, an HSI agent knocked on Escalera's door, announced police presence, and -- after receiving no response -- forcibly entered the apartment.  There were no lights on in the apartment

---

[1] In recounting the facts, our task is greatly simplified by the district court's findings of fact crediting the government's version of events leading up to the shooting.  Presumably in view of the applicable standard of review, Escalera does not challenge this finding, so we relate the facts as reported by the government.

other than the powerful flashlights held by the agents. HSI agent Menéndez saw Escalera's silhouette emerging from a bedroom. In Spanish, Menéndez yelled "police," and ordered Escalera to show his hands and stay still. Ignoring these commands, Escalera lifted his shirt, reached for his waistband, and moved for cover behind a bedroom wall. His waistband contained no discernible "bulge." Before Escalera drew his hand from his waistband area, both Menéndez and another HSI agent shot at Escalera's center mass. One of the two rounds lodged in Escalera's elbow. A subsequent search revealed no weapon either on Escalera or in the apartment. The search did, however, turn up three kilograms of cocaine, $4,000 in U.S. currency, and a gun cleaning kit.

Escalera, together with his wife and minor children, filed an FTCA claim for damages stemming from his gunshot injury. The parties consented to have the case adjudicated by a magistrate judge ("the district court"). Following a bench trial, the district court ruled for the United States. In so doing, the district court assumed that Escalera had proven a claim of common-law battery under Puerto Rico law. It rested its decision, instead, upon two conclusions: First, that even if the HSI officers' conduct constituted common-law battery, the United States could not be held liable unless the unlawfulness of the officers' conduct was clearly established at the time they acted; and second, that at the time the officers acted, no precedent

clearly established that the officers' conduct was unlawful. Escalera timely appealed.

## II.

In passing the FTCA, Congress provided "a limited congressional waiver of the sovereign immunity of the United States for tortious acts and omissions committed by federal employees acting within the scope of their employment." Díaz-Nieves v. United States, 858 F.3d 678, 683 (1st Cir. 2017); see also 28 U.S.C. § 1346(b)(1). In general, the FTCA does not waive sovereign immunity for intentional torts, but it does allow claims against the United States for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" arising from "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680. To assess liability under the FTCA, we look to "the law of the place where the act or omission occurred." Id. § 1346(b)(1). Puerto Rico law therefore supplies the substantive rules of decision in this case.

The district court's qualified immunity analysis relied upon our circuit's oft-repeated assumption "that Puerto Rico tort law would not impose personal liability" in tort actions "where the officers would be protected in Bivens claims by qualified immunity."[2] Solis-Alarcón v. United States, 662 F.3d 577, 583 (1st

___

[2] See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Cir. 2011); see also Soto-Cintrón v. United States, 901 F.3d 29, 35 (1st Cir. 2018) ("We also remain mindful of our precedent holding that the scope of liability under Puerto Rico false imprisonment mirrors liability under qualified immunity principles."). This assumption was never based on Puerto Rican authority expressly embracing the "clearly established" inquiry employed in Bivens cases. Rather, the assumption was based on a "parallel" between Puerto Rico's tort law and federal qualified immunity principles. Soto-Cintrón, 901 F.3d at 35; see also Solis-Alarcón, 662 F.3d at 583 (noting that Puerto Rico cases that balance the state's law enforcement function with the right of an injured citizen to be compensated for wrongful state action echo the "view that animates federal qualified immunity doctrine"). Making this assumption has allowed us to bypass the "significant question[s]" of "whether any local court could impose damage liability on federal officers where they would be exempt in a federal lawsuit and whether Congress under the FTCA would expect the federal government to shoulder such liability." Díaz-Nieves, 858 F.3d at 687 (quoting Solis-Alarcón, 662 F.3d at 583–84). These questions are significant because the "legislative history accompanying the 1974 amendment [to the FTCA] makes clear that Congress intended 'to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in Bivens (and for which that case imposes liability upon

- 5 -

the individual Government officials involved).'"  Rodríguez v.
United States, 54 F.3d 41, 45–46 (1st Cir. 1995) (quoting S. Rep.
No. 93-588, at 3 (1973), as reprinted in 1974 U.S.C.C.A.N. 2789,
2791).

We need not decide in this case whether our repeated
assumption concerning the availability of a qualified immunity
defense in an FTCA action arising in Puerto Rico is correct.
Escalera makes no argument that the district court erred by
assuming the defense to be applicable.  Instead, Escalera argues
that the district court erred in concluding that the officers did
not violate clearly established law.[3]  Turning our attention to
that argument, we ask whether the officers' actions "violate[d]
clearly established statutory or constitutional rights of which a
reasonable person would have known."  Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  In assessing whether an official's conduct
violated clearly established law, we typically reason by analogy,
asking whether there is any prior case in which the use of force
was deemed unlawful under circumstances reasonably similar to
those present in the case at hand.  See Ashcroft v. al-Kidd, 563
U.S. 731, 741 (2011) ("We do not require a case directly on point,

---

[3] Escalera also devotes a section of his brief to the argument
that the district court erred in its assessment of the common law
of battery in Puerto Rico.  But because the district court
ultimately assumed that Escalera proved a battery, we need not
consider this issue.

but existing precedent must have placed the statutory or constitutional question beyond debate."); Begin v. Drouin, 908 F.3d 829, 836 (1st Cir. 2018) ("[A] case need not be identical to clearly establish a sufficiently specific benchmark against which one may conclude that the law also rejects the use of deadly force in circumstances posing less of an immediate threat."). When a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable. See Rivera-Corraliza v. Morales, 794 F.3d 208, 215 (1st Cir. 2015). Here, then, Escalera had the burden to identify "controlling authority or a robust consensus of persuasive authority such that any reasonable official in the defendant's position would have known that the challenged conduct is illegal in the particular circumstances that he or she faced." Id. at 214-15 (internal quotation marks omitted).

In the briefing and at oral argument, Escalera attempted to distinguish cases in which circuit courts have held that an officer's use of deadly force was reasonable. See Carnaby v. City of Houston, 636 F.3d 183 (5th Cir. 2011) (use of force was reasonable); Ontiveros v. City of Rosenberg, 564 F.3d 379 (5th Cir. 2009) (same); Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991) (same); Young v. City of Killeen, 775 F.2d 1349 (5th Cir. 1985) (same); Anderson v. Russell, 247 F.3d 125 (4th Cir. 2001) (same). But Escalera failed to compare his shooting to the facts of a

single case in which an officer's use of force was held to be constitutionally excessive.  Nor is this a case in which the HSI officers' conduct was self-evidently unlawful.  The officers had ample reason to suspect danger: (1) They had been warned that Escalera was a gang leader and had guns in the apartment; (2) No one answered the door when beckoned; (3) Escalera did not comply with police commands to show his hands and to remain still; and (4) Escalera "lifted his shirt, reached for his waistband, and moved for cover behind a bedroom wall."  Escalera's best point is that the officers did not actually see a weapon or the "bulge" of an apparent weapon.  But he cites no case law clearly establishing that actually seeing a weapon is the sine qua non of reasonableness in circumstances such as those presented here -- where the officers were forewarned that Escalera might well be armed and dangerous, and where Escalera's behavior would lead almost anyone to believe he was reaching for a weapon.  The district court therefore did not err in dismissing Escalera's claim on the clearly-established step of qualified immunity analysis.[4]

## III.

For the foregoing reasons, we <u>affirm</u> the district court's judgment.

---

[4] The district court also properly dismissed Escalera's wife's and children's claims because they are "wholly derivative and depend[] on the viability of the underlying claim of the relative or loved one."  <u>Díaz-Nieves</u>, 858 F.3d at 689.