**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 24-1364

JÓSE AMAURY SÁNCHEZ-JIMÉNEZ,

Plaintiff, Appellant,

v.

UNITED STATES; MARIANO GARAY-ORTIZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gina R. Méndez-Miró, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Rikelman, Circuit Judges.

Javier A. Morales-Ramos for appellant.
Jaynie Lilley, Appellate Stay Attorney, Civil Division, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gabriella S. Paglieri, Assistant United States Attorney, were on brief, for appellees.

October 20, 2025

**THOMPSON, <u>Circuit Judge</u>.**

**SETUP**

Federal law gives a citizen ways to sue for wrongs done by federal employees. One way is to sue the *government* under the Federal Tort Claims Act (FTCA) for certain state-law torts they inflicted "within the scope of their employment." See <u>Brownback</u> v. <u>King</u>, 592 U.S. 209, 212 (2021). See generally <u>Linder</u> v. <u>United States</u>, 937 F.3d 1087, 1090 (7th Cir. 2019) (noting that the FTCA "applies to torts, as defined by state law — that is to say, 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred'" (emphasis omitted) (quoting 28 U.S.C. § 1346(b)(1))). Another way is to sue the *employees* under <u>Bivens</u> v. <u>Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), for certain constitutional offenses they perpetrated. See generally <u>Linder</u>, 937 F.3d at 1090 (stating that "[t]he limited coverage of the FTCA, and its inapplicability to constitutional torts, is why the Supreme Court created the <u>Bivens</u> remedy against individual federal employees").

In today's case, José Amaury Sánchez-Jiménez (just Sánchez from now on, per Spanish naming customs) tried both ways. His federal-court complaint included an FTCA claim, alleging that the government had maliciously prosecuted him for possessing a fake passport and visa, and a <u>Bivens</u> claim, alleging that CBP

- 3 -

Officer Mariano Garay-Ortiz (Garay) had violated the Fourth Amendment by testifying falsely before a grand jury.[1] Invoking (at least implicitly) federal civil-procedure rules 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim), defendants moved to dismiss. They argued (in broad strokes) that Sánchez's FTCA claim failed because he hadn't exhausted administrative remedies and hadn't plausibly alleged malicious prosecution, and that his Bivens claim failed because Bivens wasn't available in this situation. Sánchez opposed. But the judge granted the motion on no-FTCA-exhaustion and no-Bivens-availability grounds.

Sánchez now appeals, asking us to reverse the district judge's rescript. Basically writing just for the parties (who know the case's particulars), we leave the judge's decision undisturbed — relating only what's needed for our *de novo* review, a standard that permits us to affirm for any reason in the record. See, e.g., Cangrejeros de Santurce Baseball Club, LLC v. Liga De Béisbol Pro. De P.R., 146 F.4th 1, 11 n.4, 15 (1st Cir. 2025).

---

[1] CBP is an initialism for Customs and Border Protection, an agency within the Department of Homeland Security. See 6 U.S.C. § 211(a).

**ANALYSIS**

*Sánchez's FTCA Claim*

1

The FTCA makes the government liable for certain state-law torts of its employees committed within the scope of their employment. See, e.g., FDIC v. Meyer, 510 U.S. 471, 475-76 (1994). But aspiring plaintiffs can't sue under the FTCA until they exhaust administrative procedures. See, e.g., McNeil v. United States, 508 U.S. 106, 112 (1993). Which means they must first present their claim to the right federal agency. See 28 U.S.C. § 2675(a). And "[a]n essential element of a claim is 'notification of the incident,' via 'an executed' SF 95 or 'other written' document, 'accompanied by' a demand 'for money damages in a sum certain.'" Holloway v. United States, 845 F.3d 487, 488 (1st Cir. 2017) (emphasis omitted) (quoting 28 C.F.R. § 14.2(a)).[2]

2

The district judge held that Sánchez hadn't "controvert[ed]" defendants' "assertion that CBP lack[ed] any record" that he or "someone acting on his behalf" had "filed the SF95 or any other written notification of his tort claim." So the judge concluded that Sánchez had failed to exhaust administrative

_____

[2] Short for Standard Form 95, an SF 95 (sometimes spelled SF95, without a space) is a document used to submit an administrative claim under the FTCA. See 28 C.F.R. § 14.2(a).

- 5 -

remedies available to him, thus depriving the court of jurisdiction. And with that much resolved, the judge didn't address defendants' alternative argument that the complaint failed to plausibly state a malicious-prosecution claim.

3

a

The parties spend some time discussing whether the district judge got the jurisdiction question right. But because their debate concerns *statutory* (as distinct from *constitutional*) jurisdiction, we can assume without deciding that jurisdiction exists to resolve the case in defendants' favor — through a straightforward *merits* analysis. See, e.g., Gupta v. Jaddou, 118 F.4th 475, 482-83 (1st Cir. 2024) (noting that "when a case poses a question of statutory, rather than [constitutional], jurisdiction, 'the question of jurisdiction need not be resolved if a decision on the merits will favor the party challenging the court's jurisdiction'" (quoting Doe v. Town of Lisbon, 78 F.4th 38, 44-45 (1st Cir. 2023))).

Onward we go, then.

b

Sánchez's malicious-prosecution theory runs something like this. (*1*) He had flown into Puerto Rico from the Dominican Republic, carrying (at a friend's request) what turned out to be a fake passport and visa tucked inside his "luggage behind a

- 6 -

zippered liner" (he was expecting a $200 payment for his troubles). When CBP agent Garay asked him "[w]hy" he had "hid[den] the passport in [the] suitcase," Sánchez answered "[b]ecause I wasn't sure it was real." (*2*) In an affidavit supporting a criminal complaint against Sánchez, Garay later wrote that Sánchez "tried to hide" the passport and visa "because he [(Sánchez)] did not believe that both documents were real." And Garay then testified before the grand jury that Sánchez "hid the documents because he [(Sánchez)] knew that the documents were fraudulent." (*3*) Garay's lie to the grand jury — shown by his "modif[ying]" Sánchez's "'I wasn't sure'" comment "to . . . initially 'he did not believe' . . . and finally to 'he knew'" — led to Sánchez's indictment and trial on charges related to those documents, though a jury ultimately found him not guilty. (*4*) "[T]he wrongful initiation of charges without probable cause is the gravamen of the tort of malicious prosecution" — a tort "actionable under the FTCA and the [l]aws of Puerto Rico." (*5*) The net result is that Garay's "false testimony to the [g]rand [j]ury" put the government on the liability hook. Or so Sánchez says.

c

State law supplies the substantive rules of decision in FTCA cases (as intimated earlier). See 28 U.S.C. § 1346(b)(1). Here, that's the law of Puerto Rico. See, e.g., Díaz-Nieves v. United States, 858 F.3d 678, 683 (1st Cir. 2017). A malicious-

prosecution claim under that law requires the absence of probable cause to prosecute (among other elements).  See id. at 688.  And this is where Sánchez gets tripped up, as defendants argue.

"'[A] grand jury indictment definitively establishes probable cause' unless 'law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury.'"  Id. (alteration in original) (quoting González Rucci v. U.S. INS, 405 F.3d 45, 49 (1st Cir. 2005)).  But Sánchez's five-step theory fails to account for the reality that he was tried on a *second superseding indictment* issued by the grand jury after CBP agent Juan Batista testified (among other things) that Sánchez copped to hiding the documents because he "wasn't sure if they were good or not."  Sánchez never objected to Batista's testimony.  Nor does he claim that Batista wrongfully obtained the second superseding indictment by lying to the grand jury.[3]  And because the second superseding indictment definitively establishes

---

[3] Defendants attached the second superseding indictment and Batista's grand jury testimony as exhibits to their motion-to-dismiss papers, which Sánchez includes in his appellate appendices.  Sánchez makes no argument that we can't consider these kinds of documents in analyzing the motion to dismiss.  See, e.g., Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012) (indicating that a court can study certain materials — "'documents' attached to or fairly 'incorporated into the complaint,'" "'facts' susceptible to 'judicial notice,'" plus "'concessions' in . . . 'response to the motion to dismiss'" — without converting a motion to dismiss into a motion for summary judgment (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005))).

probable cause, Sánchez's malicious-prosecution theory fails and his FTCA count stays dismissed — a position championed by defendants in their brief without correction from Sánchez in his reply brief.

*Sánchez's Bivens Claim*

1

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." DeVillier v. Texas, 601 U.S. 285, 291 (2024). Bivens created one. And between 1971 and 1980, the Supreme Court crafted a cause of action against Constitution-violating federal officers in three situations: (1) a Fourth Amendment search-and-seizure violation by a federal narcotics agent, see Bivens, 403 U.S. at 389-90; (2) a Fifth Amendment employment-discrimination violation by a United States congressperson, see Davis v. Passman, 442 U.S. 228, 230-31 (1979); and (3) an Eighth Amendment inadequate-medical-care violation by prison officials, see Carlson v. Green, 446 U.S. 14, 16-18 (1980).[4]

But — a very big but, actually — the Court hasn't recognized a new Bivens action in the *many* decades since Carlson (though not because of any lack of opportunity, mind you):

---

[4] The Court refers to Bivens, Davis, and Carlson as "the Court's three Bivens cases." See Hernández v. Mesa, 589 U.S. 93, 101 (2020) (quoting Ziglar v. Abbasi, 582 U.S. 120, 134 (2017)).

- 9 -

"*consistently* refus[ing] to extend Bivens liability to any new context or new category of defendants," see Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001) (emphasis added), the Court — invoking separation-of-powers constraints — has made "clear that, in all but the most unusual circumstances, prescribing a cause of action" is Congress's business, *not ours*, see Goldey v. Fields, 606 U.S. 942, 942-43 (2025) (per curiam) (quoting Egbert v. Boule, 596 U.S. 482, 486 (2022)). And maybe because the Court has "cabined the doctrine's scope, undermined its foundation, and limited its precedential value," Hernández, 589 U.S. at 118 (Thomas, J., concurring), "expanding the Bivens remedy is now a 'disfavored' judicial activity," Ziglar, 582 U.S. at 135 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).

Though obviously skittish about extra-statutory damages suits, the Court hasn't totally slammed the Bivens door shut. See Egbert, 596 U.S. at 502 (announcing that if the Court "were called to decide Bivens today, [it] would decline to discover *any* implied causes of action in the Constitution" (emphasis added)); see also Arias v. Herzon, 150 F.4th 27, 33 (1st Cir. 2025) (finding that "[a]t the same time . . . the Court has been careful to state that Bivens itself is still good law"). When confronted with a Bivens-extension bid, we judges "proceed[] in two steps." Egbert, 596 U.S. at 492; see also Goldey, 606 U.S. at 944. We first ask whether the case presents "a 'new context' or involves a 'new

- 10 -

category of defendants,'" see Hernández, 589 U.S. at 102 (quoting Corr. Servs. Corp., 534 U.S. at 68) — "*i.e.*, is it 'meaningful[ly]' different from" the Bivens trio, see Egbert, 596 U.S. at 492 (alteration in original) (quoting Ziglar, 582 U.S. at 139); see also Goldey, 606 U.S. at 944.[5] And if it is, we then ask whether "'special factors' indicat[e] that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 136); see also Goldey, 606 U.S. at 944.[6] See generally Arias, 150 F.4th at 35 (observing that "Egbert does note that the two-step analysis may in some cases

---

[5] Examples of meaningful differences include "the rank of the officers involved," "the constitutional right at issue," "the extent of judicial guidance" on the matter, "the generality or specificity" of the disputed action, "the statutory or other legal mandate under which the officer was operating," "the risk of disruptive intrusion by the Judiciary into the functioning of other branches," and "potential special factors that previous Bivens cases did not consider." Ziglar, 582 U.S. at 140; see also id. at 147 (adding that "even a modest extension" of the Bivens trilogy "is still an extension"); see also Arias, 150 F.4th at 35 (indicating "'a difference is "meaningful" if it might alter the policy balance that initially justified the causes of action recognized'" in the Court's three Bivens cases (quoting Snowden v. Henning, 72 F.4th 237, 244 (7th Cir. 2023))). See generally Egbert, 596 U.S. at 495 (emphasizing that the step-one inquiry requires more than "superficial similarities").

[6] Examples of special factors include "national security" concerns, "foreign policy" considerations, and existing "alternative" processes for protecting a plaintiff's interests. See Egbert, 596 U.S. at 494, 496-98. See generally Quinones-Pimentel v. Cannon, 85 F.4th 63, 74 (1st Cir. 2023) (stressing that any special factor suffices "to preclude relief").

- 11 -

present only a single question" about "'whether there is any reason to think that Congress might be better equipped to create a damages remedy'" (quoting Egbert, 596 U.S. at 492)).

2

Principally relying on Hernández and Egbert, the district judge relevantly held that — because the case presented a new context (false statements to a grand jury) involving a new type of defendant (a CBP agent), and because special factors (including national security) cautioned against stretching Bivens here — Sánchez's Bivens claim failed. For context (and at the risk of oversimplifying), Hernández declined to extend Bivens to Fourth and Fifth Amendment excessive force claims against a CBP agent over a cross-border shooting. See 589 U.S. at 96-99; see also id. at 108-09 (acknowledging that CBP agents face the enormous task of responding to "'terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of the United States'" — before also stating that "[s]ince regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending Bivens into this field" (quoting 6 U.S.C. § 211(c)(5))). And Egbert refused to extend Bivens to Fourth Amendment excessive force and First Amendment retaliation claims against a CBP agent investigating a foreign national at a facility known for smuggling

- 12 -

activity and situated on the border.  See 596 U.S. at 486-90, 501-02; see also id. at 494-95 (remarking that since the CBP agent "was carrying out Border Patrol's mandate to 'interdic[t] persons attempting to illegally enter . . . the United States or goods being illegally imported into . . . the United States,'" his acts were "intimately related to foreign policy and national security" — before also stating that "the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate" (alteration in original) (quoting 6 U.S.C. § 211(e)(3)(A))).  Anyway, having so ruled, the judge dismissed Sánchez's Bivens claim under Rule 12(b)(6).

3

Faced with a high legal hill to climb, Sánchez argues that "Garay was in a similar 'rank' position as the [federal] agents in Bivens"; that his case and Bivens involve "Fourth Amendment[] rights"; that "judicial guidance is needed in instructing agents on their duties before the [c]ourts and [g]rand [j]uries"; and that "[a]llowing" his Bivens claim to continue won't "negative[ly] impact . . . governmental operations systemwide" but will "clarify that agents must respect the law."  But he doesn't engage with the district judge's Hernández/Egbert-based analysis (he fails even to cite to those cases, let alone grapple with their holdings (by, for instance trying to distinguish them, if possible)) — a point defendants make in their brief without

- 13 -

contradiction from Sánchez in his reply brief. Which can't get him the reversal he wants. See Miller v. Jackson, No. 24-1351, 2025 WL 2611944, at *10 (1st Cir. Sep. 10, 2025) (citing authority "holding that a party commits waiver by 'fail[ing] to address in its opening brief a basis on which the district court ruled against that party'" (quoting parenthetically Vizcarrondo-González v. Vilsack, No. 20-2157, 2024 WL 3221162, at *7 (1st Cir. June 28, 2024) (unpublished table decision))). See generally Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 792 (1st Cir. 2011) (underscoring that failing to give "serious treatment [to] a complex issue" won't "preserve the claim on appeal").[7]

**WRAPUP**

We ***affirm***.

---

[7] Because Sánchez's Bivens claim fails, we needn't consider Garay's claims of absolute and qualified immunity. See Quinones-Pimentel, 85 F.4th at 75 n.12.